THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **AIDONG ZOU** | |
| Plaintiff, | **Civil Action No.: 23cv16600** |
| v. | **Honorable Judge Virginia M. Kendall** |
| **THE ENTITIES AND INDIVIDUALS IDENTIFIED IN ANNEX "A"** | **Magistrate Judge Jeannice W. Appenteng** |
| Defendants. | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

Plaintiff, Aidong Zou ("Plaintiff"), by and through its counsel, submits this Reply to Defendants Whikr, YajinStore, Rain0420, Meigancai, Ooosos, Achbear, Idehobhs, Discouunt store A, Nadoutong, Chahuo245, Wang Wang Jiao, Hailongheo, Tuolaji, Yong-1, kuakua111, IFTY666, diandian886, qipaoshui, xixixxi, KuiHua, and hongyating, BAIZHONGHUI CO., LTD, GOLDEN GLORY STAND, and ULTIMATE LIGHTS (collectively "Defendants") Memorandum in Opposition of Plaintiff's Motion for Entry of Preliminary Injunction. Defendants have failed to adhere to the time frame to submit a Response, filing their Memorandum one day late. Further, Defendants filed a Supplemental Declaration to their Memorandum six days late, which was one day before Plaintiff's Reply was due.

## I. PLAINTIFF HAS SHOWN A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS.

Indeed, to satisfy the likelihood of success requirement, a "possibility of success is not enough" and "neither is a better than negligible chance." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). However, "the moving party need not show that it definitely will win the case [either]." *Id*. at 763. Rather, a showing of likelihood of success on the merits includes "a demonstration of how the applicant proposes to prove the key elements of its case." *Id*.

For a copyright infringement claim, Plaintiff must show "the ownership of a valid copyright;" and "copying of constituent elements of the work that are original." *Harris Custom Builders, Inc., v. Hoffmeyer*, 92 F.3d 517, 519 (7th Cir. 1996). The first element – ownership of a valid copyright – does not appear to be contested by Defendants. For the second element, two distinct questions arise. "The first question is whether, as a factual matter, the defendant copied the plaintiff's protected work (as opposed to independently creating a similar work); the second question is whether the copying 'went so far as to constitute an improper appropriation.'" *Design Basics, LLC v. Signature Construction, Inc*., 994 F.3d 879, 887 (7th Cir. 2021) (*citing Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp*., 672 F.2d 607, 614 (7th Cir. 1982); *see also* 4 NIMMER ON COPYRIGHT § 13.01[B] (Rev. ed. 2020) (explaining the two components of the second element in the *Feist* framework).

Here, Defendants blatantly copied Plaintiff's Copyrights, and Defendants' copying constitutes improper appropriation. As such, this Court should find Plaintiff has shown a reasonable likelihood of success on the merits and grant Plaintiff's Preliminary Injunction.

**1.      Defendants have blatantly copied Plaintiff's Copyrights.**

For this first question, "[d]irect evidence is rare, so many cases turn on inferences to be drawn from circumstantial evidence. A circumstantial case of actual copying requires: (1) evidence that the defendant had access to the plaintiff's copyrighted work (enough to support a reasonable

inference that the defendant had an opportunity to copy); and (2) evidence of a substantial similarity between the plaintiff's work and the defendant's work (enough to support a reasonable inference that copying in fact occurred)." *Design Basics, LLC* 994 F.3d at 887.

First, Defendants have had ample access to Plaintiff's Copyrights. Plaintiff's Copyright Reg. No. VA 2-371-834 has been published and disseminated to the public since July 18, 2019. See **Exhibit B**. Further, Plaintiff's Copyright Reg. No. VA 2-371-834 has been publicly registered with the United States Copyright Office since November 14, 2023. Similarly, Plaintiff's Copyright Reg. No. VA 2-371-731 has been published and disseminated to the public since July 28, 2020, and it was publicly registered with the United States Copyright Office on November 20, 2023. See **Exhibit C**. Further, Plaintiff's Copyrights were first completed in 2015, and thereafter, Plaintiff conducted internal testing. Decl. Aidong Zou ¶¶ 3, 5. In 2020, Plaintiff and their respective company began selling on Amazon, and soon thereafter, Defendants began making and producing Infringing Products. Decl. Aidong Zou ¶ 5. Finally, Plaintiff's Copyrights have been the subject of substantial marketing and promotion by Plaintiff, including significant Amazon promotion worth $42,907.91 (excluding shooting costs) and TikTok promotion via social media celebrities. Decl. Aidong Zou ¶¶ 7 - 8. Based on the evidence of copyright registrations with publication dates, Plaintiff's offline customer testing, and Plaintiff's early sales publication on Amazon and substantial advertising, Defendants have had enough access and opportunity to copy Plaintiff's Copyrights.

Second, substantial similarity exists between Plaintiff's Copyrights and Defendants' Infringing Products. Indeed, "[c]onfusion sometimes arises because the test for unlawful appropriation—a distinct inquiry—also looks for substantial similarity between the defendant's work and the plaintiff's work." *Design Basics, LLC* 994 F.3d at 888. Here, "[w]hen used as a test

3

for actual copying in a circumstantial case, the requirement of 'substantial similarity' is not limited to the protected elements of the plaintiff's work. Similarities that relate to either the protected or unprotected elements of the plaintiff's work may be probative of actual copying." *Id*. Attached as **Exhibit E**, a comparison chart provides a basic comparison of Plaintiff's Copyrights and Defendants' Infringing Products.

Indeed, there is blatant substantial similarity between Defendants' Infringing Products and Plaintiff's Copyrights, probative of 'actual copying' rather than 'independent creation.' As highlighted, in the first row, Defendants' Infringing Products contain the following similarities: identical body shape / size with a flat back, identical arch-shaped arc on the top of the head that extends from the front face to an arc surface, identical M-shaped double arc top shape on the belly, identical ear design / size / shape / location, identical eye size / shape / location, identical stitching from each eye to inner ear, identical design / shape / location / size of the snout protruding from bear, identical arm size / connections / location / stitching to body, identical 'foot' hole from bottom of head to near the tail, identical stitching between 'foot' hole and tail, identical tail size / shape / location, identical size / roundness of faces, and identical size / shape / design / stitching for the bears' feet. For the second row, Defendants' Infringing Products contain the following similarities: identical shape / size / location / material / design for soles of footwear, identical border between black bottom and bear material, identical stitching between black bottom and tail, and identical tail shape / design / size / location. For the third row, Defendants' Infringing Products contain the following similarities: identical ear locations / size / shapes / designs at the peak of the rounded head, identical stitching from the outside of the ear around the face of the bear, identical snout protrusion (more visible on side angle), identical arm size / length / shape / design / stitching, and identical leg size / shape (i.e. even identical crease locations). For the fifth row, Defendants'

4

Infringing Products contain the following similarities: identical size / stitching / shape / design of the outside of the bear legs. For the sixth row, Defendants' Infringing Products contain the following similarities: identical stitching down center of head, connecting to an additional line of stitching spanning from the inner side of both ears. For the sixth row, Defendants' Infringing Products contain the following similarities: identical bear leg size / shapes / design / inner stitching, identical top of foot stitching, and identical tail shape / size / position. Finally, as seen throughout, Defendants' Infringing Products contain the identical facial expression and body language as Plaintiff's Copyrights – providing an identical "look and feel".

Further, "evidence of truly striking similarity may function as a proxy for access. As we observed in *Selle*, an inference of access may arise from 'proof of similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'" *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017) (citations omitted); *see also Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) ("Access (and copying) may be inferred when two works are so similar to each other and not to anything in the public domain that it is likely that the creator of the second work copied the first, but the inference can be rebutted by disproving access or otherwise showing independent creation…"). Here, Defendants have not denied the fact that they had access to Plaintiff's Copyrights nor have Defendants alleged any independent creation of their Infringing Products.

In sum, Plaintiff has provided evidence that Defendants had the opportunity to copy and access to Plaintiff's Copyrights. Moreover, comparing Defendants' Infringing Products and Plaintiff's Copyrights (both protected and unprotected elements), substantial similarity exists. Finally, based on the identicality of Defendants' Infringing Products and Plaintiff's Copyrights,

Plaintiff believes that access and copying can plainly be inferred. As a result, Plaintiff has satisfied the first question.

### 2. Defendants' Infringing Products constitutes an improper appropriation of Plaintiff's Copyrights.

Defendants' Infringing Products utilize and copy protectable, original elements of Plaintiffs' Copyrights. The Seventh Circuit, "like most others, uses the 'ordinary observer' test for unlawful appropriation: 'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protect[a]ble expression by taking material of substance and value.'" *Design Basics, LLC* 994 F.3d at 888 (citations omitted).

Defendants' argument addresses a belief that any expression of nature is inherently in the public domain, and similarly, that there are only so many ways to design a teddy bear. Defendants insist on a narrow scope of protection for Plaintiff's Copyrights. However, "[w]hen reproduction of a lifelike object is at issue, 'a copyright holder must then prove substantial similarity to those few aspects of the work that are expression not required by the idea.'" *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 (7th Cir. 1994) (citations omitted).

Here, Plaintiff has been a designer in the footwear industry with much experience. Decl. Aidong Zou ¶ 2. In 2014, Plaintiff came up with the idea of creating a warm and cute pair of slippers, which was competed in 2015 as seen in **Exhibit A**. Decl. Aidong Zou ¶ 3. Plaintiff's Copyrights contain much original expression that exists independently of the idea of a teddy bear, including the overall shape of Plaintiff's Copyrights with a flat back, whereas ordinary teddy bears contain a rounded body. Decl. Aidong Zou ¶ 6(a). Further, Plaintiff's Copyrights have an arch-shaped arc on the top of the head that extends from the front face to an arc surface, whereas ordinary teddy bears contain a spherical arc. Decl. Aidong Zou ¶ 6(b). Also, Plaintiff's Copyrights

contain an M-shaped double arc on the front belly, whereas ordinary teddy bears contain large, rounded bellies. Decl. Aidong Zou ¶ 6(c). Plaintiff's Copyrights contain raised polka dot design on the back, with specific plush material. Decl. Aidong Zou ¶ 6(d)-(e). Moreover, Plaintiff's Copyrights have various eye effects, whereas ordinary teddy bears contain black eyes. Decl. Aidong Zou ¶ 6(f). Plaintiff's Copyrights contain unique arc-shaped ears with folded corners, whereas ordinary teddy bears contain flat ears. Decl. Aidong Zou ¶ 6(g). Plaintiff's Copyrights contain a unique combination of the nose and mouth, the triangular round convex top is three-dimensional, and the combination of the lower string and the curved smile line, whereas ordinary teddy bears vary and do not require such expression. Decl. Aidong Zou ¶ 6(h). Plaintiff's Copyrights include unique arms that are designed to extend downward, but instead of abducting, they connect downward toward the feet, whereas ordinary teddy bears have flailing arms that are much longer. Decl. Aidong Zou ¶ 6(i). Finally, Plaintiff's Copyrights contain unique short and strong legs, designed upwards, showing a 'pudgy' cuteness, whereas ordinary teddy bears have longer extended legs that are not affixed in an upwards position. Decl. Aidong Zou ¶ 6(j).

As seen above, Plaintiff's Copyrights contain a significant amount of originality and expression that is not required by the idea of a teddy bear. Plaintiff spent a significant amount of time and effort creating the original Plaintiff's Copyrights. Defendants' contention that only so many ways of making teddy bears exists is further frustrated, because indeed, there exists millions of ways to express teddy bears, and subsequently teddy bear slippers, many of which are provided as an example in **Exhibit G (many images were in fact submitted by Defendants)**. Yet, Defendants chose to copy the exact expression designed by Plaintiff and protected in Plaintiff's Copyrights.

7

*Wildlife Express Corp* is illustrative and contains substantially the same facts. *Id*. In that case, plaintiff sold duffle bags with stuffed animal heads and tails on each side. *Id*. at 505. The District Court found substantial similarity and defendants appealed. *Id*. at 506. The specific elements of copying found by the District Court included: "**[For the teddy bear at issue] the size and location of its ears, type and placement of the eyes relative to each other and the snout, and the kind of loop tail and its location and alignment on the back of the bag;** [For the duck at issue] the location of the eyes relative to each other and the bill, the shape, color, configuration and location of the bill, and the shape of tail and its location; [For the elephant at issue] the size and location of its ears, the placement of the eyes relative to each other and the trunk, the shape and placement of the trunk, and the presence of a braided string tail at the top of the back of the bag; [For the duffle bags themselves] virtually identical in size, shape and in the location of eye, ear and nose (bill and trunk) holes." *Id*. at 509. The District Court found for plaintiff on substantial similarity[1]. The defendant appealed, arguing inherent ideas of animals, like ears and eyes. *Id*.

The Court of Appeals upheld, finding "[t]here is certainly an imaginative artistic expression in the soft sculptured heads and tails. Upon consideration of the overall look and character of the duffle bags, or their 'total concept and feel,' we see a remarkable resemblance between [plaintiff's] and [defendant's] works." *Id*. at 510-11 (quoting 3 Nimmer § 13.03[A] at 13-39 to 13-44; *Atari*, 672 F.2d at 620). The Court of Appeals even noted some dissimilarities, specifically "in the color and type of plush fur" of the animals; "However, such variations are, no doubt to some extent,

---

[1] District Court's Memorandum stating "In this case, the Plaintiff's particular expression of the idea of making children's duffle bags with soft sculpture animal heads and tails on the ends would be properly protectible under the Copyright Act. Of course, the idea of animal styled duffle bags would not be protectible under copyright law. However, when an ordinary observer would compare these two expressions of the duffle bags, he would certainly overlook any differences in them, such as the zippers around the ends on the Defendant's bags, and regard their "aesthetic appeal" as the same. The Defendant's bags are substantially similar to the Plaintiff's work, and since the Defendant had access to the Plaintiff's work, the Court finds that the Defendant has infringed on the Plaintiff's copyrights." *Id*. at 510.

factors of the products available to each company and perhaps of slight adaptations in the patterns. These differences are of minor importance in the overall artistic expression of the entire animal faces and tails under review, and, consequently, they do not preclude a finding of infringement under the ordinary observer test." *Id.* at 511.

Similar to *Wildlife Express Corp*, in this case and as discussed above, Defendants' Infringing Product contain substantial similarities to an "ordinary observer", including: identical overall shape with flat bottom, identical arch-shaped arc on the top of the head that extends from the front face to an arc surface, identical M-shaped double arc top shape on belly, identical raised polka dot design on the back, identical material, identical effects in the eyes, identical arc-shaped ears with folded corners, identical combination of the nose and mouth, the triangular round convex top is three-dimensional, and the combination of the lower string and the curved smile line, identical arms that are designed to extend downward, but instead of abducting, they connect downward toward the feet, and identical short and strong legs, designed upwards, showing a 'pudgy' cuteness. Decl. Aidong Zou ¶ 6, *See* **Exhibit F**. As seen in **Exhibit E**, Defendants' Infringing Products contain each of the unique, original expressions found in Plaintiff's Copyrights. Further, **Exhibit F** shows how each of Defendants' respective Infringing Products contains the original elements discussed above in Plaintiff's Copyrights. Other original expression found in Plaintiff's Copyrights that are improperly appropriated by Defendants include: identical stitching from each eye to inner ear, identical stitching of arms and legs to the body, identical 'foot' hole from bottom of head to near the tail, identical stitching between 'foot' hole and tail, identical tails, identical roundness of faces, identical border between black bottom and bear material, identical stitching from the outside of the ear around the face of the bear, and identical stitching

9

down center of head, connecting to an additional line of stitching spanning from the inner side of both ears.

Indeed, Defendants are entitled to use facts from nature that no one owns the rights too. However, Defendants are not free to copy – identically - Plaintiff's original expression. *See Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 349 (1991) (recognizing that the thin copyright in a factual compilation means that, "[n]otwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, **so long as the competing work does not feature the same selection and arrangement**"); *See also Concrete Mach. Co. v. Classic Lawn Ornaments, Inc*., 843 F.2d 600, 607 (1st Cir.1988) (appellant cannot prohibit others from appropriating its idea of life-size, "realistic-looking concrete deer"; only **substantial similarity in specific features could support an infringement claim**).

Here, Defendants argue two differences exist between Plaintiff's Copyrights and Defendants' Infringing Products – color and fur. As discussed above, *Wildlife Express Corp* found this exact argument does "not preclude a finding of infringement under the ordinary observer test." 18 F.3d at 511.

Specifically, for the fur, Plaintiff's Copyrights cover both types of fur – one with shorter hair and one with slightly longer hair. So, if this Court finds fur to be a unique factor of originality distinguishing the Defendants' Infringing Works, Defendants still have identical fur to one of Plaintiff's Copyrights. Also, specifically for Defendant NADOUTONG, Defendants argue that the product contains crisscrossed stitching; yet, Defendants are mistaken. Defendant NADOUTONG's Infringing Product is provided in **Exhibit F**, containing fur consistent with the rest of Defendants. In fact, the majority if not all of Defendants on the Amazon platform contain

10

identical advertising images. Although many of the example pictures in **Exhibit F** are identical, all images are true and correct captures from Defendants' respective Internet Stores. Decl. Ge (Linda) Lei ¶ 4.

Next, Defendants argue that many of the Defendant Internet Stores sell different colors. Yet, as seen in **Exhibit F**, each and every Defendant offers the exact brown color as Plaintiff. Further, Defendants' use of different colors does not provide an escape for copyright infringement. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1094 n.6 (2d Cir. 1977) (holding that **mere changes in the color scheme of a copied design does not usually protect a defendant from the charge of infringement**). Moreover, mere variations of color are not even copyrightable works. See 37 CFR 202.1.

In sum, the "primary objective of the Copyright Act, [which is] the promotion of the arts and sciences, is accomplished by assuring authors the right to their original expression, but also by encouraging others to build freely upon the ideas and information conveyed by a work." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994). In this case, Defendants' Infringing Products are identical copies in virtually every aspect. This is not a case where Defendants sought to "build freely upon the ideas and information conveyed by a work"; rather, Defendants took Plaintiff's Copyrights and started selling identical counterfeit copies. As a result, any originality, whether this Court determines a lot or a little, in Plaintiff's Copyrights is improperly appropriated by Defendants. Thus, Plaintiff has proven substantial similarity, and therefore, Plaintiff is likely to succeed on the merits and a Preliminary Injunction should be granted.

**B.      Defendants' asset restraint should remain in place.**

As discussed in Plaintiff's Memorandum in Support of Preliminary Injunction, Plaintiff seeks a continued asset freeze to ensure the availability of permanent monetary relief given the likelihood that Defendants will simply transfer their ill-gotten assets in an attempt to evade any judgment against them entered by this Court.

Indeed, Defendants have appeared and have not provided any further personal information to Plaintiff or this Court. Rather, Defendants identify two 'administrators' with apparent knowledge of Defendants' Seller Aliases but are not Defendants. Still, these 'administrators' on behalf of Defendants claim to have a certain accounting of the Internet stores; however, an accounting provided by Amazon.com to Plaintiff differs in numerous respects. Decl. Aidong Zou ¶ 9. For example, the GMV for Defendant GOLDEN GLORY STAND provided by Xia Wan is $1,782.90; however, the GMV for Defendant GOLDEN GLORY STAND provided by Walmart.com is $16,386.24. Decl. Aidong Zou ¶ 9. Also, for example, the GMV for Defendant BAIZHONGHUI CO.,LTD provided by Xia Wan is $1,625.58; however, the GMV for Defendant BAIZHONGHUI CO.,LTD provided by Walmart.com is $6,569.87. Decl. Aidong Zou ¶ 9. Also, for example, the GMV for Defendant KuiHua provided by Wenguang Wang is $363.72; however, the GMV for Defendant KuiHua provided by Amazon.com is $2,608.30. Decl. Aidong Zou ¶ 9. This calls into question the credibility and truthfulness of the 'administrators' Declarations submitted by Defendants. Moreover, Amazon.com limits individuals / entities to one account, and two 'administrators' appearing for 24 seller aliases further calls into question the 'authority' of these two 'administrators' to speak on behalf of Defendants. Due to this uncertainty, Plaintiff and this Court cannot determine an exact amount of profits earned from infringement by Defendants.

As a result, the asset restraint should remain in place until damages are awarded, ensuring Plaintiff can recover damages of any kind.

## II.    CONCLUSION

In view of the foregoing, Plaintiff respectfully requests that this Court enter a Preliminary Injunction enjoining Defendants from further infringement and extending the asset restraint granted in the TRO.

DATED: January 22, 2024                        Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
203 N. LaSalle St., Suite 2100
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*

13