THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AIDONG ZOU, | ) |
|       *Plaintiff,* | ) No. 23 C 16600 |
| v. | ) Judge Virginia M. Kendall |
| THE ENTITIES AND INDIVDUALS IDENFIED IN ANNEX A, | ) |
|       *Defendant.* | ) |

## MEMORANDUM OPINION AND ORDER

This case is one of many brought in this District, in which brand owners sue large groups of online merchants (generically "identified on Schedule A"), alleging copyright infringement. In this case, as in most of the other "Schedule A" cases, the court entered a temporary restraining order and asset freeze (Dkt. 10) and, later, a preliminary injunction against the defendant entities and individuals (Dkt. 29). A subset of the defendants named here—Duailipin (#5), Alayger (#6), VRPQ (#8), OLDSH (#1), RRGIOH (#2), Shenzhen Tinff Technology Co., Ltd. (#11), and SUMMERJOY's (#143) (hereinafter "Defendants")—moved to set aside the preliminary injunction as against them or, in the alternative, to amend the asset freeze. (Dkt. 36). For the reasons discussed below, the Court denies the Motion to Set Aside [36].

### BACKGROUND

Plaintiff Zou holds copyrights for two teddy bear slipper products. (Dkt. 2 at ¶ 62). Zou filed this action in December 2023, alleging that defendants violated those copyrights. (*Id*. at ¶ 4). Defendants operate various "e-commerce stores" on third-party online platforms wherein they sell

1

unauthorized reproductions of Plaintiff's copyrights. (*Id*. ¶¶ 3-6). Zou claims that Defendants obtained direct and indirect profits from the sale of infringing products. (*Id*. at ¶ 69).

On the same day he filed his complaint, Zou moved *ex parte* for a temporary restraining order and asset restraint against Defendants. (Dkt. 3). Days later, the court granted that motion and entered an order, drafted by Plaintiff's counsel, that (1) enjoined the defendants from manufacturing, distributing, offering for sale, and disposing of counterfeit products; (2) deactivated the defendants' domain names; (3) restrained the assets in Defendants' PayPal, Amazon, and other third party provider accounts; (4) provided Plaintiffs with expedited discovery; and (5) permitted service by electronic mail and/or electronic publication. (Dkt. 10).

The Court later granted Zou's motion (Dkt. 12) to extend the TRO (Dkt. 16), and on January 8, 2024, the Court granted Zou's motion (Dkt. 22) for preliminary injunction. (Dkt. 29). Defendants now move to set aside the preliminary injunction as against them. (Dkt. 36).

## LEGAL STANDARD

The legal standard to impose a preliminary injunction is well established. "To obtain a preliminary injunction, the moving party must make an initial showing that (1) it will suffer irreparable harm in the period before final resolution of its claims; (2) traditional legal remedies are inadequate; and (3) the claim has some likelihood of success on the merits." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). If the moving party makes that showing, "the court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to other parties or the public is sufficiently weighty that the injunction should be denied." *Id*. at 324. "The strength of the moving party's likelihood of success on the merits affects the balance of harms." *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). In other words, "[t]he more likely it

is that the moving party will win its case on the merits, the less the balance of harms need weigh in its favor." *Id*. (quotation marks and brackets removed).

The standards for dissolving an injunction are the same as those for granting or denying one. *Centurion Reinsurance Co. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987). The court asks whether "the expected cost of dissolving the injunction—considering the probability that dissolution would be erroneous because the plaintiff really is entitled to injunctive relief, and the consequences of such an error—[is] greater or less than the expected cost of not dissolving the injunction." *Id*. "If greater, the injunction should not be dissolved; if less, it should be." *Id*.

## DISCUSSION

Defendants do not argue that traditional legal remedies would be adequate. Accordingly, the Court analyzes the irreparable harm and likelihood of success elements.

### I. Plaintiff Has Shown a Likelihood of Success on the Merits.

"The likelihood of success on the merits is an early measurement of the quality of the underlying lawsuit." See *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). The required showing is not overly rigorous. In fact, the "threshold for demonstrating a likelihood of success on the merits is low." *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016). "[T]he plaintiff's chances of prevailing need only be better than negligible." *Id*. Here, Plaintiff need only demonstrate a better than negligible chance of proving (1) ownership of a valid copyright in a work and (2) the copying of elements of the work that are original. *Feist Publ'ns, Inc. v. Rural*

3

*Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Harbor Motor Co. v. Arnell Chevrolet–Geo, Inc.*, 265 F.3d 638, 644 (7th Cir. 2001).

The first element—ownership of a valid copyright—is not contested here. Zou registered his original works with the United States Copyright Office, and Defendants do not dispute his ownership or the validity of the copyrights. (Dkts. 2-1, 2-2).

This litigation, at its core, turns on the second element—whether Defendants copied Zou's work. In evaluating whether a plaintiff is likely to succeed in proving that his work was copied, courts consider two distinct questions. The first question is whether, as a factual matter, plaintiff has a better than negligible chance of showing that Defendants copied Plaintiff's protected work (as opposed to independently creating a similar work). *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 887 (7th Cir. 2021). The second question is whether plaintiff has a better than negligible chance of showing that "the copying 'went so far as to constitute an improper appropriation.'" *Id*.

As to the first question—whether there was actual copying—because "[d]irect evidence [of copying] is rare," courts permit plaintiffs to prove copying through circumstantial evidence. Namely, plaintiffs must provide "(1) evidence that the defendant had access to the plaintiff's copyrighted work (enough to support a reasonable inference that the defendant had an opportunity to copy); and (2) evidence of a substantial similarity between the plaintiff's work and the defendant's work (enough to support a reasonable inference that copying in fact occurred).

At this stage of the litigation, Zou has sufficiently shown access and substantial similarity. Regarding access, Zou provided evidence that his copyrights have been available to the public since 2019 and 2020 respectively; that his products have been available on Amazon since 2020; and that his products were marketed through a substantial Amazon promotion as well as a series

4

of celebrity endorsements on TikTok. (Dkt. 2 at 1, 12; Dkt. 47 at 3). Further, Defendants have neither denied that they had access to Zou's copyrights nor have they alleged any independent creation of the infringing products. Taking together Zou's marketing efforts and Defendants' silence about their own access to the copyrighted material, there is a likelihood that Zou can prove Defendants' access to the copyrighted work.

Regarding substantial similarity, Zou provided a detailed chart showing the similarities between his product and Defendants' infringing products. (Dkts. 47-7, 47-8). There is an uncanny resemblance between the body and head shape, ear and face design, foot hole, slipper soles, tail, eye placement, and stitching. This is especially true when considering the various other teddy bear designs provided by Zou, which do not resemble Zou's slippers. (Dkt. 47-9). Accordingly, the Court finds that there is a likelihood that Zou can prove substantial similarity between his product and Defendants' products.

As to the second question—whether the copying amounts to improper appropriation—courts consider whether there are "substantial similarities between the defendant's work and *protected elements* in the plaintiff's copyrighted work." *Id*. The Seventh Circuit uses the "ordinary observer" test for unlawful appropriation: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protect[a]ble expression by taking material of substance and value." *Id*. (citing *Wildlife Express Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 508–09 (7th Cir. 1994). Here, Zou's copyrights protect the "[s]culptural features" that are "capable of existing independently of the utilitarian aspects" of the slipper. (Dkts. 2-1, 2-2). As established, there are numerous shape and design elements between Zou's slippers and Defendants' slippers that bear

5

uncanny resemblance. Accordingly, an ordinary reasonable person could find that Defendants unlawfully appropriated Plaintiff's work.

The Court finds that Zou has a better than negligible chance of establishing improper appropriation; indeed, Zou has a strong case. Consequently, Zou demonstrated a likelihood of success on the merits.

II.     **Plaintiff Has Shown a Possibility of Irreparable Harm.**

Despite the strength of Zou's case, the Court must also consider proof of irreparable harm. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997). It is true that the stronger the case on the merits, the less irreparable harm must be shown. *Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir.1997); *Planned Parenthood of Ind.,* 699 F.3d at 972 (noting "the strength of the moving party's likelihood of success on the merits affects the balance of harms"). Harm is irreparable if legal remedies are inadequate to cure it. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). Defendants argue that Zou cannot show any irreparable harm for three reasons: there is no presumption of irreparable harm, Zou has not provided any evidence of actual harm, and Zou's delay in bringing this action evinces the lack of irreparable harm.

True, there is no longer a presumption of irreparable harm in copyright infringement cases. *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006). However, the Court finds persuasive Zou's argument that he will suffer irreparable harm because he invested "substantial time, effort and money into creating the [copyright protected work]" and he likely will not realize a return on that "investment due to [Defendants'] infringement of the copyright." (Dkt. 47 at 13). There is no way to measure the diminution in value on Zou's marketing campaign, which Defendants may have benefited from to Zou's detriment. Further, the record shows that Defendants are indeed selling teddy bear slippers

of varying quality, thereby cutting into Zou's customer base and impacting his brand reputation. (Dkt. 47-10) *See Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022) (adequate showing of irreparable harm where plaintiffs showed "potential harm to goodwill, reputation, brand confidence, [and] potential lost market share").

Finally, the record does not clearly establish when Zou discovered the alleged infringement. Even if Zou was aware of the infringement in 2020 when Defendants began selling their products, that delay weakens Zou's irreparable harm argument but does not, in the Court's view, defeat it. "The Seventh Circuit uses a sliding scale approach in which the more likely it is that a plaintiff will succeed on the merits, then the less the balance of irreparable harms must favor the plaintiff's position." *Antsy Labs, LLC*, 2022 WL 17176498, at *4. *See Ty*, 237 F.3d at 895. This follows from the Seventh Circuit's rationale in *Centurion*. Because Zou has a strong likelihood of success, he need not also establish a strong showing of irreparable harm to warrant continued injunctive relief. Here, Zou has made the requisite showing of likelihood of success and irreparable harm; the Court therefore declines to dissolve the injunction.

**III. The Court Declines to Amend the Asset Freeze at This Time.**

In the alternative, Defendants request that if the Court declines to lift the injunction, it should "allow [Defendants] to post a bond or similar undertaking in the amount of $2,000 for each of the six Amazon accounts … in lieu of the asset freeze of approximately $209,748." (Dkt. 37 at 11).

To exempt assets from an asset freeze, "[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *Luxottica USA LLC v. The Partnerships, et al*., 2015 WL 3818622 (N.D. Ill. June 18,

7

2015); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. Sep. 29, 2015). Defendants have not submitted any evidence regarding their Amazon account transactions to show that the frozen assets are not the proceeds of counterfeiting activities. Accordingly, the Court declines to modify the injunction at this time.

## CONCLUSION

For the foregoing reasons, Defendants' motion to set aside the preliminary injunction (or, in the alternative, to amend the asset freeze) [36] is denied without prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: March 8, 2024